IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRAKHAR AGARWAL,<br><br>Plaintiff,<br><br>vs.<br><br>LOREN K. MILLER, in his official capacity as Director, Nebraska Service Center, U.S. Citizenship and Immigration Services; and JOSEPH B. EDLOW, in his official capacity as Director, U.S. Citizenship and Immigration Services,<br><br>Defendants. | **4:26CV3049**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

In a Complaint for Declaratory Relief, Plaintiff Prakhar Agarwal seeks declaratory judgment, injunctive relief, and judicial review of an agency action under the Administrative Procedure Act (APA) based on Defendants' allegedly unlawful, arbitrary, and *ultra vires* denial of Agarwal's two I-140 Petitions for Alien Worker (I-140 EB-1A Petitions) seeking classification as an alien of "extraordinary ability." Filing 1 at 1. Agarwal also challenges the two-part test under the so-called "*Kazarian* policy" used by the United States Citizenship and Immigration Services (USCIS) to adjudicate I-140 EB-1A petitions. Filing 1 at 1–2 (¶ 2). Agarwal's Complaint is essentially identical to the Complaint in *Sesham v. Miller*, Case No. 4:26cv3042 (D. Neb.). This case is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 9. Defendants seek either dismissal of the claims in Agarwal's Complaint in their entirety or their dismissal to the extent that they challenge the *Karzarian* policy. Filing 10 at 2. Defendants' Motion and supporting arguments are also

essentially identical to those they asserted in *Sesham*. For the reasons stated below, Defendants' Motion is granted, and Agarwal's Complaint is dismissed in its entirety.

## I. INTRODUCTION

### A. The EB-1A Visa and the *Kazarian* Policy

Some legal context is helpful to understanding this litigation and the parties' arguments. The Fifth Circuit explained,

> The [EB-1A] visa, colloquially dubbed the "Einstein" or genius' visa, is available to those whose extraordinary ability "has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation."

*Amin v. Mayorkas*, 24 F.4th 383, 386–87 (5th Cir. 2022) (quoting 8 U.S.C. § 1153(b)(1)(A)); *see also* Filing 1 at 2 (¶ 3) ("The 'EB-1A' sub-category authorizes the immigration of foreign nationals who are found to be of extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim." (citing 8 U.S.C. §1153(b)(1)(A))).

Central to Agarwal's claims is Defendants' use of a two-step adjudicative procedure for "extraordinary ability" visas under the so-called *Kazarian* policy adopted by USCIS in 2010 and based on *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010). Filing 1 at 1–2 (¶ 2). Under the *Kazarian* policy, USCIS first examines whether the alien meets certain criteria set out in a regulation, 8 C.F.R. § 204.5(h)(3)(i)–(x), then considers the totality of the evidence to make a "final merits determination" regarding the required high level of expertise for the immigrant classification. Filing 1 at 5 (¶ 16), 8 (¶ 23); *see also* Filing 1-4 (USCIS Policy Memorandum, PM-602-0005.1); 2010 WL 5597716 (INS) (Policy Memorandum).[1]

[1] This Court has set out the statutory and regulatory bases for "extraordinary ability" visas and the requirements of the *Kararian* policy in considerably more detail in *Etsy, Inc. v. Jaddou*, No. 4:22CV3022, 2023 WL 3689555, at *1–5 (D. Neb. May 25, 2023), and *Agrawal v. Miller*, No. 4:24CV3143, 2025 WL 2879217, at *6–9 (D. Neb. Sept. 12, 2025).

With this context in mind, the Court turns to the factual and procedural background for this case.

**B. Factual and Procedural Background**

In his Complaint, Agarwal provides few factual allegations about himself or his attempts to obtain a visa as an alien of extraordinary ability. He does not allege his citizenship, but he does allege that because of USCIS's actions he "is unable to adjust his status to that of a lawful permanent resident and to accrue time toward qualifying for naturalization to be a U.S. citizen." Filing 1 at 11 (¶ 44). Agarwal alleges that he filed two I-140 EB-1A Petitions: He filed the first on March 21, 2025, but it was denied on July 17, 2025, and he filed the second on September 15, 2025, but it was denied on January 15, 2026. Filing 1 at 2 (¶ 6), 5 (¶ 16); Filing 1-2 at 2; Filing 1-3 at 2. Agarwal alleges that "[d]espite the volume and magnitude of the evidence" in USCIS's record, and USCIS's concession that he satisfied at least three of the criteria in 8 C.F.R. § 204.5(h)(3), his I-140 EB-1A Petitions were denied. Filing 1 at 2 (¶ 6). He alleges the denials were because USCIS determined that he had not demonstrated that he possesses "the high level of expertise required for the E11 immigrant classification," that is, at "Step 2" or the "Final Merits Analysis" under the *Kazarian* policy. Filing 1 at 2 (¶ 6), 5 (¶ 16).

In his Complaint, Agarwal asserts three claims for relief. In "Count I - APA Violations by DHS/USCIS of 5 U.S.C. §701, *et seq*.," he alleges,

> 26. Pursuant to the APA, a person adversely affected by agency action is entitled to judicial review. *See* 5 U.S.C. §702.
>
> 27. The APA requires this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. §706(2)(A).
>
> 28. Defendant USCIS's decision to apply its *Kazarian* EB-1A Step 2 policy to plaintiff's Form I-140 EB-1A petitions was unlawful and is reviewable under 5 U.S.C. §702.

Filing 1 at 8–9 (¶¶ 26–28). He alleges that he has been adversely affected by USCIS's "illegal conduct" and "therefore is entitled to judicial review of the denial of h[is] EB-1A I-140 petition[s] under 5 U.S.C. § 702." Filing 1 at 9 (¶ 29) (citing 5 U.S.C. § 706(2)(A)).

In "Count II – Declaratory Judgment on Violation of 5 U.S.C. §553," Agarwal alleges,

> 31. Defendant USCIS's change in its policy on EB-1A adjudications announced in its December 22, 2010, policy memorandum [adopting the *Kazarian* policy] was a substantive, legislative rule change because it substantively altered the rights of EB-1A petitioners and changed the substantive eligibility requirements for an EB-1 category immigrant visa. *See* Exhibit B [Filing 1-4].
>
> 32. This legislative rule harmed the plaintiff when USCIS imposed the *Kazarian* rule in its decisions on his EB-1A I-140 petitions, and thus this claim is ripe for review by this Court.

Filing 1 at 9 (¶¶ 31–32). Agarwal alleges further that USCIS did not sufficiently identify how compliance with the APA's "notice and comment" requirements would have been "impracticable, unnecessary, or contrary to public policy" so as to come within the APA's "good cause exception" to "notice and comment" requirements nor did USCIS ever claim to have such "good cause." Filing 11 at 9–10 (¶¶ 33–35). He alleges, "Based on the foregoing, this Court should set aside defendant USCIS's *Kazarian* policy and 2-step test because the policy and 2-step test require notice and comments rulemaking in accordance with the APA." Filing 1 at 10 (¶ 36) (citing 5 U.S.C. §553(b)).

In "Count III – Violation of 5 U.S.C. §706," Agarwal alleges in essence,

> 41. Defendant USCIS's conduct in adopting the "*Kazarian* policy" and related two-step test was arbitrary, capricious, an abuse of discretion, otherwise unlawful, and an impermissible interpretation of a non-ambiguous statute, in violation of the APA. *See* 5 U.S.C. §706 and *Loper Bright [Enterprises v. Raimondo*, 603 U.S. 369 (2024)].
>
> 42. As a result of defendant USCIS's illegal conduct, the plaintiff is "suffering [a] legal wrong because of agency action" and is "adversely affected or aggrieved by [the] agency action," and therefore is entitled to the abrogation of the "*Kazarian* policy" and two-step test applied to his two EB-1A I-140 petitions.

Filing 1 at 11 (¶¶ 41–42).

As relief,

> [Agarwal] respectfully requests that this Honorable Court:
>
> (1) Declare that the denials of his two (2) EB-1A I-140 petition violate the APA, the INA and its attendant regulations, are *ultra vires*, erroneous as a matter of law, arbitrary and capricious, abuses of discretion, and not otherwise in accordance with law, and violate due process;
>
> (2) Issue an order directing Defendants to reopen and properly re-adjudicate his two (2) EB-1A I-140 petitions;
>
> (3) Issue an order directing Defendants to complete the re-adjudication of his two (2) EB-1A I-140 petitions within a reasonable time set by this Court;
>
> (4) Declare that defendant USCIS's "*Kazarian* policy" and related two-step test are improper under the APA for failure to comply with 5 U.S.C. §553(b) and/or for being in impermissible interpretation and constraint of 8 U.S.C. §1153(b)(1)(a), and abrogate the policy as such;
>
> (5) Grant him such other relief as this Court deems proper under the circumstances; and
>
> (6) Grant him his attorney's fees, expenses and costs of court, pursuant to the [Equal Access to Justice Act (EAJA)].

Filing 1 at 12 (Relief Requested).

On June 3, 2026, Defendants Loren K. Miller, in his official capacity as Director, Nebraska Service Center of USCIS, and Joseph B. Edlow, in his official capacity as Director of USCIS, filed the Motion to Dismiss for Failure to State a Claim now before the Court. Filing 9. Agarwal filed his Brief in Opposition on June 24, 2026. Filing 11. Defendants then filed a Reply Brief on July 9, 2026. Filing 14. The Motion is deemed fully submitted on the parties' written submissions. *See* NECivR 7.1(e) (explaining *inter alia* that "[i]n general the court does not allow oral argument or evidentiary hearings on motions").

## II. LEGAL ANALYSIS

As Defendants point out, the undersigned has twice considered challenges to the Kazarian policy, and the undersigned upheld the policy both times. *See Etsy, Inc. v. Jaddou*, No.

4:22CV3022, 2023 WL 3689555, at *23 (D. Neb. May 25, 2023) (dismissing with prejudice a plaintiff's claim that the *Kazarian* policy is *ultra vires* and procedurally unsound); *Agrawal v. Miller*, No. 4:24CV3143, 2025 WL 2879217, at *24 (D. Neb. Sept. 12, 2025) (denying a plaintiff's motion for summary judgment in its entirety and granting the defendants' motion for summary judgment as to all three of plaintiff's claims where the defendants' use of the two-step adjudicative procedure under the *Kazarian* policy was central to the plaintiff's claims). In his brief in opposition to Defendants' Motion to Dismiss, Agarwal attempts to distinguish *Etsy*, but he makes no reference at all to *Agrawal*.[2] Instead, in both his Complaint and his opposition brief, Agarwal focuses on a contrary decision by another judge of this district in *Mukherji v. Miller*, No. 4:24CV3170, 2026 WL 895708 (D. Neb. Jan. 28, 2026). Defendants point out that all other courts addressing the issue that Defendants' counsel could find have reached the opposite conclusion from *Mukherji*. Because Agarwal asserts both old and new arguments, the Court will draw on its prior decisions when it can and conduct new analyses when it must.

### A. Applicable Standards

The Court begins its legal analysis with summaries of the standards applicable to Defendants' Motion to Dismiss. Those standards concern both pleading standards to state a claim and APA standards for agency decisions.

#### *1. Pleading Standards*

To state a claim, "a pleading"[3] need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, Federal Rule of Civil Procedure 12(b)(6) provides for a motion filed pre-answer (or pre-responsive pleading) to

---

[2] Overlooking the *Agrawal* decision is particularly odd because the same attorney who represented the plaintiff in *Agrawal* now represents Agarwal.

[3] Federal Rule of Civil Procedure 7(a) identifies allowable pleadings.

dismiss claims "in any pleading" asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Eighth Circuit Court of Appeals recently explained the Rule 12(b)(6) standards as follows:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

*Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025).

Although courts must accept a complaint's allegations as true, courts "do not accept 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,'" or legal conclusions unsupported by factual allegations. *Dalen v. Harpstead*, 123 F.4th 900, 903–04 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 663). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp*., 2 F.4th 751, 755 (8th Cir. 2021). A court also is not required to wait and see if more specific information becomes available through the discovery process to decide if a pleading can state a claim. *Steinbuch v. Cutler*, 518 F.3d 580, 591 (8th Cir. 2008) (finding no abuse of discretion in refusing to allow discovery where a pleading lacked sufficient factual allegations to state a claim).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. As the Supreme Court explained,

> Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.,* *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In other words, a claim must be both factually plausible and legally cognizable. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (holding dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents).

Agarwal believes that the question on Defendants' Motion to Dismiss is whether he has plausibly pleaded his challenges. *See* Filing 11 at 5–7 (making this argument as to his substantive challenges), 12–13 (making this argument as to his procedural challenges). The Court disagrees. Agarwal has not made plausible factual allegations but has alleged "legal conclusions drawn from the facts"—specifically, legal conclusions that the *Kazarian* policy does not conform to the statute or regulations and was improperly adopted—but the Court need not accept such legal conclusions as true. *Knowles*, 2 F.4th at 755. The important questions are the legal ones of whether the *Kazarian* policy is authorized by the statute and regulation and whether it was properly adopted. Thus, in this case, the "legal cognizability" standard for statement of a claim applies.

*2. APA Standards*

Agarwal's claims are based on APA standards. Counts I and III involve APA standards for judicial review of agency action. In the pertinent part of 5 U.S.C. § 702, the APA provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5

U.S.C. § 702. Section 706(2)(A) specifies the standard for judicial review. It states in pertinent part,

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> * * *
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

5 U.S.C. § 706(2)(A).

Agarwal's Count II is based on 5 U.S.C. § 553(b), another provision of the APA, which sets out the notice-and-comment requirement for agency rulemaking. Section 553(b) provides as follows:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include–
>
> (1) a statement of the time, place, and nature of public rule making proceedings;
>
> (2) reference to the legal authority under which the rule is proposed;
>
> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved; and
>
> (4) the Internet address of a summary of not more than 100 words in length of the proposed rule, in plain language, that shall be posted on the Internet website under section 206(d) of the E-Government Act of 2002 (44 U.S.C. 3501 note) (commonly known as regulations.gov).
>
> Except when notice or hearing is required by statute, this subsection does not apply–
>
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b). Thus, whether notice-and-comment procedures are required turns on the kind of rule at issue, excluding from the requirement among others "interpretive" rules. 5 U.S.C. § 553 (exception (A)).

### B. Agarwal's Challenges to the Substance of the *Kazarian* Policy Fail to State Claims

A court may set aside agency action under the APA if *inter alia* it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Northport Health Servs. of Arkansas, LLC v. U.S. Dep't of Health & Hum. Servs*., 14 F.4th 856, 866 (8th Cir. 2021) (quoting 5 U.S.C. § 706(2)(C)), *cert. denied sub nom. Northport Health Servs. of Arkansas, LLC v. Dep't of Health & Hum. Servs*., 143 S. Ct. 294 (2022). Agarwal attempts to assert such a substantive challenge to the *Kazarian* policy in Counts I and III.

*1. The Parties' Arguments*

Agarwal argues that nothing in 8 U.S.C. § 1153 or 8 C.F.R. § 204.5(h) authorizes a separate "final merits determination," so that the second step in the *Kazarian* policy is the agency's unauthorized creation. Filing 11 at 6. Defendants argue that the *Kazarian* policy substantively implements the statute and regulation on which it is based, as shown by the text of the statute and the regulation. Filing 10 at 12–20; Filing 14 at 1, 9–11.

*2. The* Kazarian *Policy Conforms to the Controlling Statute and Regulation*

The Court finds unavailing Agarwal's argument that nothing in the statute or regulation authorizes a separate "final merits determination" that would allow denial of a petition that satisfies the regulatory criteria. Filing 11 at 6. The Court reiterates its conclusion that as a matter of law the *Kazarian* Policy is consistent—not inconsistent—with 8 U.S.C. § 1153(b)(1)(A) and the agency's

preexisting legislative rule in 8 C.F.R. § 204.5(h). *Etsy, Inc.*, 2023 WL 3689555, at *16. In *Etsy*, this Court agreed with the Fifth Circuit's conclusion in *Amin*. *Etsy, Inc.*, 2023 WL 3689555, at *16 (citing *Amin*, 24 F.4th at 391–92). The Fifth Circuit in *Amin* pointed out *inter alia* that "[t]he regulation labels the categories [of evidence that must accompany the I-140 EB-1A petition] '*Initial* evidence' and states that applicants must submit evidence of '*at least* three' criteria." 24 F.4th at 391 (emphasis in the original). This Court agrees with the Fifth Circuit's observation, "This word choice contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more?" *Etsy, Inc.*, 2023 WL 3689555, at *16 (quoting *Amin*, 24 F.4th at 391).

This Court then explained,

> [T]his Court focus[es] directly on the relationship between the *Kazarian* Policy and the statute and between the Policy and the preexisting regulation. *Iowa League of Cities [v. EPA]*, 711 F.3d [844,] 877 [(8th Cir. 2013)] ("Agency rules will survive *ultra vires* allegations so long as we can reasonably conclude that the grants of authority in the statutory provisions cited by the government contemplate the issuance." (internal quotation marks and citation omitted)); *El Dorado Chem. Co. [v. U.S. E.P.A.]*, 763 F.3d [950,] 958 [(8th Cir. 2014)] (explaining that a rule is invalid if it is a plainly erroneous interpretation of the agency's own regulation or inconsistent with the regulation). This Court observes that the first step under the *Kazarian* Policy—considering the evidence of achievements—corresponds to the statutory requirement of "extensive documentation" in 8 U.S.C. § 1153(b)(1)(A)(i). It also corresponds to the express regulatory criteria in 8 C.F.R. § 204.5(h)(3). The second step under that Policy—making a final merits determination—corresponds to determination on the essential statutory requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim" in 8 U.S.C. § 1153(b)(1)(A)(i). It also corresponds to the determination on the regulatory definition of "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor" in 8 C.F.R. § 204.5(h)(2).

*Etsy, Inc.*, 2023 WL 3689555, at *16.

Also unavailing is Agarwal's argument that USCIS denied his first I-140 EB-1A Petition on the ground that he had not demonstrated "the high level of expertise required for the EI1 immigrant classification" because that phrase appears nowhere in the statute or regulation. Filing

11 at 6 (quoting Filing 1-2 at 6). That argument misses the point in two ways. First, it mistakes USCIS's introductory paraphrase of the step 2 standard in its decision (and a paraphrase that the Court cannot conclude is a mischaracterization) for the standard that USCIS actually applied. USCIS stated the standard it ultimately applied in its final merits determination in the following terms:

> [T]he record does not otherwise demonstrate that the petitioner has garnered national or international acclaim in the field, and that he is one of the small percentage who has risen to the very top of the field of endeavor. *See* section 203(b)(l)(A) of the Act and 8 C.F.R. § 204.5(h)(2).

Filing 1-2 at 9 (citing § 203(b)(1)(A) of the Act, and 8 C.F.R. § 204.5(h)(2)-(3)); *see also* Filing 1-3 at 7 ("USCIS has determined that the petitioner's record does not establish that he is recognized nationally or internationally as one of that small percentage who has risen to the very top of the field."). Agarwal's second mistake is that he fails to recognize that the standard USCIS applied was the exact statutory and regulatory standard—stated in the statutory and regulatory terms—that this Court concluded in *Etsy* authorized the final merits determination under the *Kazarian* policy. *See Etsy, Inc.*, 2023 WL 3689555, at *16.

The Court finds equally unavailing Agarwal's "new" argument that his substantive challenges to the *Kazarian* policy rest on binding Supreme Court precedent that Defendants do not address. Filing 11 at 2. Specifically, Agarwal points to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), as changing the standard for determining whether USCIS has acted within its statutory authority. Filing 11 at 2. Agarwal is correct that in *Loper Bright Enterprises*, the Supreme Court overruled the longstanding, deferential *Chevron* standard[4] for determining whether an agency acted within its statutory authority and replaced it with a requirement that courts "must

[4] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In *Loper Bright Enterprises*, the Supreme Court stated that *Chevron* "sometimes required courts to defer to 'permissible' agency interpretations of the statutes those agencies administer." 603 U.S. at 377.

exercise their independent judgment" in deciding that question. Filing 11 at 7 (quoting *Loper Bright Enterprises*, 603 U.S. at 412). Yet, he cites nothing but timing to suggest that the Court's decision in *Etsy* did not conform to the "new" standard of exercising independent judgment. In *Etsy*, the Court explicitly laid out its independent reasoning without a hint of deference to any agency interpretation. *See Etsy, Inc.*, 2023 WL 3689555, at *16. In these circumstances, even though Agarwal prefers the post-*Loper Bright Enterprises* decision in *Mukherji v. Miller*, No. 4:24CV3170, 2026 WL 895708 (D. Neb. Jan. 28, 2026), the Court declines to follow *Mukherji* because it is unsound and unconvincing. Also, an "intra-district disagreement on the underlying merits" provides no basis for allowing what this Court reiterates is a fatally flawed claim to survive a motion to dismiss. *Contra* Filing 11 at 8–9.

Defendants' Motion to Dismiss is granted as to Agarwal's challenges to the substance of the *Kazarian* policy and those challenges are dismissed.

### C. Agarwal's Procedural Challenges to the *Kazarian* Policy Fail to State Claims

Agarwal makes procedural challenges to the adoption of the *Kazarian* policy as well as substantive challenges to the content of the policy. An agency rule may be invalidated on procedural grounds as well as for exceeding authority. *Northport Health Servs. of Arkansas, LLC*, 14 F.4th at 866 (explaining that a court may set aside agency action under the APA if *inter alia* it is "without observance of procedure required by law" (quoting 5 U.S.C. § 706(2)(D))); *Children's Health Care v. Centers for Medicare & Medicaid Servs.*, 900 F.3d 1022, 1025 (8th Cir. 2018) (same).

One procedural challenge is Agarwal's argument that the *Kazarian* policy was adopted without the required notice-and-comment procedure. Filing 11 at 1. The second procedural challenge is Agarwal's argument that the *Kazarian* policy was adopted without displaying

awareness that USCIS was changing its policy and without showing good reasons for the policy change. Filing 11 at 2. Agarwal asserts that this second challenge is a substantive challenge. Filing 11 at 2. Nevertheless, the Court concludes that these two challenges are procedural because both turn on whether the *Kazarian* policy effected a change in existing law or policy; indeed, these challenges are so interrelated that the Court's disposition of the first challenge will dictate the disposition of the second one. Although the Court does not grant dismissal of these procedural challenges on all the grounds asserted by Defendants, these challenges ultimately fail to state claims on which relief can be granted.

*1. The Challenge to Lack of Notice and Comment*

a. Agarwal's Challenge to Lack of Notice-and-Comment Is Timely

Defendants assert that to the extent Agarwal challenges the adoption of the *Kazarian* policy as violating notice-and-comment requirements of 5 U.S.C. § 553, the challenge is untimely. Filing 10 at 2. Although this Court addressed a statute of limitations argument in *Etsy*, the Court relied on *North Dakota Retail Association v. Board of Governors of the Federal Reserve System*, 55 F.4th 634 (8th Cir. 2022), as setting out the controlling standard in terms of whether the challenge at issue was "facial" or "as-applied." *Etsy, Inc.*, 2023 WL 3689555, at *9–12. The problem—as Agarwal points out—is that subsequently in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024), the Supreme Court clarified when the 6-year limitations period under 28 U.S.C. § 2401(a) begins to run on an APA claim using a much different focus. Filing 11 at 3. In *Corner Post*, the Supreme Court concluded that an APA claim accrues when the plaintiff is injured by final agency action. *Corner Post*, 603 U.S. at 804. Agarwal also points out that the Eighth Circuit subsequently vacated its decision in *North Dakota Retail Association*. Filing 11 at 3 (citing *N. Dakota Retail Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*,

113 F.4th 1027 (8th Cir. 2024)). Thus, the Court must undertake a new analysis of this "timeliness" issue in light of subsequent precedent.

i. The Parties' Arguments

Defendants argue that the holding in *Corner Post* arose in a case where the plaintiff made a substantive *ultra vires* challenge to final agency action. Filing 10 at 25 (citing *Corner Post*, 603 U.S. at 806). They contend that the Supreme Court stated that "only parties that existed during the rulemaking process can claim to have been injured by a 'procedural' shortcoming, like deficient notice of proposed rulemaking." Filing 10 at 25 (quoting *Corner Post*, 603 U.S. at 824 n.8).

Agarwal contends that his notice-and-comment claim accrued under *Corner Post* on July 17, 2025, and January 15, 2026, when USCIS applied the challenged policy to deny his two I-140 EB-1A Petition, and he timely filed this lawsuit on February 14, 2026. Filing 11 at 16. He asserts that Defendants rely on *dicta* in a footnote in *Corner Post* on an issue that the Supreme Court expressly declined to decide. Filing 11 at 17. He argues further that *Corner Post* expressly distinguished abstract, pre-injury "procedural" challenges from a claim like his tied to concrete agency action against the plaintiff himself. Filing 11 at 18.

In reply, Defendants argue that the footnote on which it relies "critically explains the Court's holding is tailored to substantive challenges to regulations." Filing 14 at 11 (citing *Corner Post*, 603 U.S. at 824 n.8). Defendants argue that *Corner Post* did not abrogate the Eighth Circuit's prior holding that the limitation under § 2401(a) begins to run on a claim of a procedural defect in a policy when the policy was issued. Filing 14 at 11–12.

ii. The *Corner Post* Decision Requires Determination of When Injury Occurred

The footnote in *Corner Post* at the center of the parties' dispute here states the following:

> It also may be that some injuries can only be suffered by entities that existed at the time of the challenged action. Corner Post suggests that only parties that existed

> during the rulemaking process can claim to have been injured by a "procedural" shortcoming, like a deficient notice of proposed rulemaking. Reply Brief 18–19. We need not resolve that issue here because there is no dispute that Corner Post proffered an injury that does not depend on its having existed when the Board promulgated Regulation II: the rule's alleged conflict with the Durbin Amendment. The dissent's observation that "the claims in this case are procedural," *post*, at 2479, is confused. Even if some of Corner Post's claims might be procedural, its central claim—that the regulation violates the statute—is a prototypical substantive challenge.

*Corner Post*, 603 U.S. at 824 n.8. It is clear from the full text of this footnote that Defendants erroneously identified the Supreme Court's statement of a party's argument—"that only parties that existed during the rulemaking process can claim to have been injured by a 'procedural' shortcoming, like a deficient notice of proposed rulemaking"—as the Supreme Court's own statement. Filing 10 at 25. It also is clear that Agarwal is correct that the Supreme Court expressly did not resolve the issue raised in that party's argument. *Corner Post*, 603 U.S. at 824 n.8 ("We need not resolve that issue here . . . .").

In *Corner Post*, the Supreme Court's ultimate holding was that "[a]n APA claim does not accrue for purposes of § 2401(a)'s 6-year statute of limitations until the plaintiff is injured by final agency action." 603 U.S. at 825. The Supreme Court plainly did not restrict this holding to any particular kind of APA claim; it stated its holding in terms of any APA claim. *Id.* The reference to the claim at issue in the case as "a prototypical substantive challenge" was stated as a reason that the Supreme Court did not need to resolve whether there was any distinction between an injury by a "procedural" shortcoming as opposed to an injury by a substantive shortcoming. *Id.* at 824 n.8.

Earlier in its decision in *Corner Post*, the Supreme Court distinguished between a "statute of limitations" and a "statute of repose," concluding that § 2401(a) was the former:

> Section 2401(a) thus operates as a statute of limitations rather than a statute of repose. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 7–8, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) (quoting *Black's* 1546 (9th ed. 2009)). That describes § 2401(a), with its reference to when the right of action "accrues,"

> to a tee. "A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action" that is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." 573 U.S., at 8, 134 S.Ct. 2175. Such statutes bar "'any suit that is brought after a specified time since the defendant acted ... even if this period ends before the plaintiff has suffered a resulting injury.'" *Ibid.* (quoting *Black's* 1546).

*Corner Post*, 603 U.S. at 812.

iii. Agarwal's Notice-and-Comment Claim Accrued Less Than Six Years Ago

In light of the Supreme Court's determination in *Corner Post* that for purposes of the statute of limitations in § 2401, an APA claim accrues on the date of injury, Defendants' argument that the time for a challenge to the adoption of the *Kazarian* policy ran from the date that the policy was adopted is simply untenable. 603 U.S. at 825.

Defendants are incorrect when they assert that Corner Post did not expressly overrule the Eighth Circuit's earlier decision in *North Dakota Retail Association*, 55 F.4th 634. To the contrary, the decision in North Dakota Retail Association was the case on which certiorari was granted sub nom. *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 144 S. Ct. 478 (2023). In Corner Post, the Supreme Court noted that the Eighth Circuit had affirmed the district court and had thereby "deepened a circuit split over when § 2401(a)'s statute of limitations begins to run for APA suits challenging agency action." *Corner Post*, 603 U.S. at 806–07. After stating its holding, the Supreme Court "reverse[d] the Eighth Circuit's judgment to the contrary and remand[ed] the case for further proceedings consistent with this opinion." *Id.* at 825.

On remand, the Eighth Circuit stated the applicable rule in precisely the same way that the Supreme Court did:

> An APA claim does not accrue for purposes of § 2401(a)'s 6-year statute of limitations until the plaintiff is injured by final agency action. Because Corner Post filed suit within six years of its injury, § 2401(a) did not bar its challenge to Regulation II.

*N. Dakota Retail Ass'n*, 113 F.4th at 1027 (quoting *Corner Post*, 603 U.S. at 825). The Eighth Circuit did not state or hint at a "procedural" claims exception or make any reference to footnote 8 in *Corner Post*. The Eighth Circuit expressly stated, "In accordance with the Supreme Court's decision, this court's opinion of December 14, 2022 is vacated, and this case remanded to the district court for further proceedings." *See N. Dakota Retail Ass'n*, 113 F.4th at 1027. Thus, *Corner Post* and the Eighth Circuit's subsequent decision on remand in *North Dakota Retail Association* are controlling.

Here, Agarwal was not injured by final agency action—adoption of the *Kazarian* policy—until the *Kazarian* policy was used to deny his I-140 EB-1A Petitions on July 17, 2025, and January 15, 2026, respectively. Filing 1 at 2 (¶ 6), 5 (¶ 16); Filing 1-2 at 2; Filing 1-3 at 2; *Corner Post*, 603 U.S. at 825 (defining the date of injury as when a claim accrues under § 2401). Thus, the 6-year statute of limitations under § 2401(a) on his claim challenging that final agency action has not yet run. *Corner Post*, 603 U.S. at 825; *N. Dakota Retail Ass'n*, 113 F.4th at 1027. To conclude that the time limit ran before Agarwal was even injured would turn § 2401(a) into a statute of repose, but the Supreme Court stated in *Corner Post* that § 2401(a) is a statute of limitations not a statute of repose. *Id.* at 812.

Defendants' Motion to Dismiss is denied to the extent that it asserted the untimeliness of Agarwal's procedural challenge to failure to use the notice-and-comment procedure in § 553.

b. Notice-and-Comment Was Not Required

Nevertheless, Agarwal's challenge to the lack of notice-and-comment procedures is fatally flawed so that it does not state a legally cognizable claim upon which relief can be granted.

i. The Parties' Arguments

Defendants argue that the *Kazarian* policy was an "interpretive" rule that did not need to go through notice and comment like a "legislative" rule would have. Filing 10 at 12, 21.

Defendants argue that the *Kazarian* policy is "interpretive" because it states what the administrative agency thinks the statute means and reminds affected parties of existing duties. Filing 10 at 21. Defendants argue that USCIS explained when it adopted the policy that it only changed when the determination of extraordinary ability occurs in the adjudicative process. Filing 10 at 221 (citing PM-602-005.1, 2010 WL 5597761, *3); *see also* Filing 1-4 at 4. They argue that the *Kazarian* policy does not require anything more than the statute or regulations that apply to the "extraordinary ability" visa require. Filing 10 at 22.

Agarwal responds that the *Kazarian* "final merits" framework imposes new substantive requirements and operates as binding agency action. Filing 11 at 121.[5] He argues that an alien who satisfies three or more of the categories of evidence set out in 8 C.F.R. § 204.5(h)(3) is eligible for the classification under the regulation as written, but the *Kazarian* policy imposes a separate "final merits determination" at which the petition may be denied even if the alien satisfied the regulatory criteria. Filing 11 at 12. He contends further that in this "final merits determination" the alien must independently demonstrate a "high level of expertise" or comparable elevated standing that is inconsistent with the controlling statute and regulation. Filing 11 at 12. Agarwal asserts that a rule that produces denial despite regulatory eligibility is not merely "interpretive." Filing 11 at 13. He asserts further than the agency's failed attempt at rulemaking in 1995 treated the identical framework as substantive, showing that the *Kazarian* policy is not merely an "interpretive" rule. Filing 11 at 13–14.

In reply, Defendants reiterate that the *Kazarian* policy is an interpretive rule that did not require notice-and-comment procedures. Filing 14 at 910. They add that the 1995 proposal of a

[5] Again, Agarwal frames many of his arguments in support of his challenge to the lack of notice and comment in terms of plausible pleading, but for the reasons stated in § II.A.1., the Court concludes that what is at issue is a question of law, going to the legal cognizability rather than the factual plausibility of his claim.

similar analytical framework does not change the analysis or require a different conclusion. Filing 14 at 10–11.

ii. Notice-and Comment Requirements Do Not Apply to Interpretive Rules

As the Supreme Court explained a decade ago, the notice-and-comment requirements of 5 U.S.C. § 553(b)(A) do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting the statute). In *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013), the Eighth Circuit adopted a de novo standard of review for "the categorization of an agency's action as a legislative or interpretative rule" because that issue "is largely a question of law." 711 F.3d at 872; *see also id.* at 867 (agreeing with other courts that "whether a Guidance Document is a legislative rule is largely a legal, not a factual, question, turning primarily upon the text of the Document" (citation omitted)). The Supreme Court also explained, "For our purposes, it suffices to say that the critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez*, 575 U.S. at 96–97 (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)). The Eighth Circuit has explained that, in contrast, a rule is "legislative" and thus requires notice-and-comment procedures if it "amends or adds to, versus simply interpreting the contours of, a preexisting rule." *Children's Health Care v. Centers for Medicare & Medicaid Servs.*, 900 F.3d 1022, 1025 (8th Cir. 2018) (quoting *Iowa League of Cities*, 711 F.3d at 873, in turn citing *U.S. Telecomm. Ass'n v. FCC*, 400 F.3d 29, 34-35 (D.C. Cir. 2005)). The fact that a rule or agency pronouncement is "binding" does not necessarily determine whether or not it is "legislative." *Iowa League of Cities*, 711 F.3d at 873.

iii. The *Kazarian* Policy Is "Interpretive" Not "Legislative"

The Court concludes that notice-and-comment requirements do not apply to the *Kazarian* policy as a matter of law, so Agarwal's challenge based on failure to follow notice-and-comment procedures is not legally cognizable. Because Agarwal offers nothing that convinces the Court that its prior disposition of this issue in *Etsy* was wrong, the Court will reiterate the most important parts of its prior analysis set out in more detail in *Etsy, Inc.*, 2023 WL 3689555, at *21–23.

For essentially the same reasons that the Court concluded above in § II.B.2. that the *Kazarian* policy is not *ultra vires* as contrary to the statute and preexisting regulation at issue, the *Kazarian* policy is not "legislative" as a matter of law because it does not substantively amend or add to either the statute or the preexisting regulation or impose new requirements. *See Etsy, Inc.*, 2023 WL 3689555, at *21. The *Kazarian* policy aligns with the requirements of 8 U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h) and adheres to the preexisting burden of proof. *Id.*

The *Kazarian* policy was also issued to advise the public and adjudicators of the agency's construction of the applicable statutes and rules, so it is an "interpretive" rule. *Id.* at *22. More specifically,

> The Fifth Circuit concluded, and this Court agrees, that the Kazarian Policy "clarifies the order in which agency adjudicators evaluate the evidence." *Amin*, 24 F.4th at 392 (stating that the Policy "merely" does this). The *Kazarian* Policy clarifies that the agency adjudicator must "first objectively evaluate each type of evidence submitted to determine if it meets the parameters applicable to that type of evidence described in the regulations (also referred to as 'regulatory criteria')," *i.e.*, the criteria set out in § 204.5(h)(3) or (h)(3)(i)–(x). [Filing 1-4 at 5]. It also clarifies that the agency adjudicator "then should consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for the immigrant classification." [Filing 1-4 at 5].

*Etsy, Inc.*, 2023 WL 3689555, at *22 (replacing record citations with citations to the record in this case). As this Court explained further,

> Read in its entirety, the *Kazarian* Policy does more than clarify the order in which agency adjudicators evaluate the evidence, however. It also "state[s] what

> the administrative agency thinks the statute means and only remind[s] affected parties of existing duties." *Iowa League of Cities*, 711 F.3d at 873 (internal quotation marks and citations omitted). The *Kazarian* Policy states its limited purpose to be precisely that it "provides guidance regarding the analysis that U.S. Citizenship and Immigration Service (USCIS) officers who adjudicate these petitions should use when evaluating evidence submitted in support of Form I-140, Immigrant Petition for Alien Worker." [Filing 1-4 at 2]. It likewise reiterates that the "preponderance of the evidence" burden of proof applies to both steps of the analysis. [Filing 1-4 at 5]; [Filing 1-4 at 14–15].

*Etsy, Inc.*, 2023 WL 3689555, at *22 (replacing record citations with citations to the record in this case). To forestall any argument that this conclusion defers to the agency's statement and does not follow from the Court's own "exercise [of its] independent judgment," *Loper Bright Enterprises*, 603 U.S. at 412, the Court hastens to add that the agency's statements conform to this Court's exercise of its own independent judgment. The Court has not conformed its judgment to the agency's, as should be apparent from this Court's evaluation of whether the *Kazarian* policy conforms to the statute and regulation controlling adjudication of an "extraordinary ability" visa set out above in § II.B.2.

For the reasons stated in *Etsy*, the Court also rejects Agarwal's argument that the 1995 failed attempt to enact the same 2-step framework as a "legislative" rule shows that the *Kazarian* policy is not merely an "interpretive" rule. Filing 11 at 13–14. The irony of Agarwal's reliance on a prior agency interpretation of a similar rule to argue that the Court should find the *Kazarian* policy is "legislative" is not lost on the Court. Agarwal elsewhere relied heavily on the need for the Court to "exercise [its own] independent judgment" in evaluating the *Kazarian* policy and not defer to agency interpretations in the wake of *Loper Bright Enterprises*, 603 U.S. at 412. Irony aside, this argument has no merit. Agarwal—like Etsy—has not cited and the Court has not found any authority that initially offering a rule in a package submitted for notice and comment is a concession by the agency that one specific rule in the package necessarily is "legislative" and requires notice and comment or estops the agency from later adopting the rule without adhering to

notice-and-comment procedures if the agency determines that the rule is not subject to such procedures. *Etsy*, 2023 WL 3689555, at *14.

Because the *Kazarian* policy is an "interpretive" rule, it is not subject to the notice-and-comment requirements that Agarwal asserts should have been followed.

*2. The Challenge to USCIS's Awareness of and Good Reasons for the Policy Change*

Agarwal also asserts a procedural challenge based on *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016), which made clear that when an agency changes its existing position, "the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" 579 U.S. at 221 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). This challenge fares no better than the prior challenge based on lack of notice and comment and for essentially the same reasons that the Court rejected that challenge.

a. The Parties' Arguments

Defendants argue that USCIS satisfied *Encino Motorcars* by providing a clear and complete statement of its rationale for adopting the *Kazarian* policy. Filing 10 at 19 (citing PM-602-0005.1, 2010 WL 5597716, at *2). They identify the stated purpose as the need to make the "extraordinary ability" determination process more transparent and consistent. Filing 10 at 19.

Agarwal argues that the Policy Memorandum with the adoption of the *Kazarian* policy disclaimed any change in agency policy, but from 1991, when the implementing regulation was promulgated, to 2010, USCIS did not employ a separate "final merits determination" step. Filing 11 at 9. He asserts that USCIS provided no reasoned explanation for the change because of its representation that no change was being made. Filing 11 at 9. Agarwal argues that the proffered rationale of a need to clarify how evidence is considered and to produce greater consistency in decisions does not address the prior policy or reasons for departing from it. Filing 11 at 9–10.

In reply, Defendants argue that assuming the *Kazarian* policy was a change rather than an interpretive clarification—which Defendants deny—the 2010 Policy Memorandum setting out the *Kazarian* policy displayed the required awareness of what was different and gave good reasons. Filing 14 at 8. They argue that the Policy Memorandum cited the Ninth Circuit's then-new *Kazarian* opinion and stated USCIS's agreement with its approach. Filing 14 at 8. They assert that the full statement of the rationale in the Policy Memorandum satisfied the requirements of *Encino Motorcars*. Filing 14 at 9.

b. Agarwal's *Encino Motorcars* Challenge Fails for the Same Reasons the *Kazarian* Policy Was Not a "Legislative" Rule

The Court concluded above that the *Kazarian* policy is not "legislative" as a matter of law because it does not substantively amend or add to either the statute or the preexisting regulation or impose new requirements. The Court also concluded above that the *Kazarian* policy issued to advise the public and adjudicators of the agency's construction of the applicable statutes and rules, so it is an "interpretive" rule. Nevertheless, the Court will also consider whether USCIS satisfied *Encino Motorcars* if the adoption of the *Kazarian* policy could be considered a "change."

c. USCIS's Stated Rationale Satisfied *Encino Motorcars*

In support of adoption of the *Kazarian* policy, USCIS stated the following:

> USCIS agrees with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of extraordinary ability: (1) Determine whether the petitioner or self-petitioner has submitted the required evidence that meets the parameters for each type of evidence listed at 8 CFR 204.5(h)(3); and (2) Determine whether the evidence submitted is sufficient to demonstrate that the beneficiary or self-petitioner meets the required high level of expertise for the extraordinary ability immigrant classification during a final merits determination. By contrast, the approach taken by USCIS officers in *Kazarian* collapsed these two parts and evaluated the evidence at the beginning stage of the adjudicative process, with each type of evidence being evaluated individually to determine whether the self-petitioner was extraordinary.
>
> The two-part adjudicative approach to evaluating evidence described in *Kazarian* simplifies the adjudicative process by eliminating piecemeal consideration of

> extraordinary ability and shifting the analysis of overall extraordinary ability to the end of the adjudicative process when a determination on the entire petition is made (the final merits determination). Therefore, under this approach, an objective evaluation of the initial evidence listed at 8 CFR 204.5(h)(3) will continue as before; what changes is when the determination of extraordinary ability occurs in the adjudicative process. USCIS believes that this approach will lead to decisions that more clearly explain how evidence was considered, the basis for the overall determination of eligibility (or lack thereof), and greater consistency in decisions on petitions for aliens with extraordinary ability.

PM-602-0005.1, 2010 WL 5597716, at *2–3; Filing 1-4 at 4.

A reasonable and independent examination of this statement demonstrates that it satisfies the requirements of *Encino Motorcars*. The statement identifies what might be considered a "change" by explaining in the first paragraph quoted above that the adjudicative approach was in two parts, with a final merits determination based on all the evidence submitted. *Id*. at *2; Filing 1-4 at 4. The statement contrasted that approach with the one taken by the USCIS officers in *Kazarian* that "collapsed these two parts and evaluated the evidence at the beginning stage of the adjudicative process, with each type of evidence being evaluated individually to determine whether the self-petitioner was extraordinary." *Id.* The statement also recognized changes or differences in [1] "simplifi[cation] [of] the adjudicative process [2] by eliminating piecemeal consideration of extraordinary ability and [3] shifting the analysis of overall extraordinary ability to the end of the adjudicative process [4] when a determination on the entire petition is made," which also contrasted with the single-step process and piecemeal evaluation of evidence by the USCIS officers in *Kazarian. Id*. at *3 (bracketed numbers inserted); Filing 1-4 at 4 (bracketed numbers inserted). USCIS expressly recognized that "what changes is when the determination of extraordinary ability occurs in the adjudicative process." *Id.* These statements more than adequately indicated USCIS's awareness of changes or at least differences under the new policy. *See Encino Motorcars*, 579 U.S. at 221 (explaining that "the agency must at least 'display

awareness that it is changing position . . . .'" (quoting *Fox Television Stations, Inc.*, 556 U.S. at 515)).

The statement also sets out good reasons for the changes or differences. *Id.* (explaining that the agency also must "show that there are good reasons for the new policy." (quoting *Fox Television Stations, Inc.*, 556 U.S. at 515)). Simplification of the adjudicative process is not just a difference but a good reason for the change. PM-602-0005.1, 2010 WL 5597716, at *3; Filing 1-4 at 4. USCIS then expressly stated that it believed the Kazarian approach "will lead to decisions that more clearly explain how evidence was considered, the basis for the overall determination of eligibility (or lack thereof), and greater consistency in decisions on petitions for aliens with extraordinary ability." *Id.* The Court finds Agarwal's argument that the proffered rationale does not address the prior policy or reasons for departing from it at best nonsensical. Filing 11 at 9–10. "Clarification" and "greater consistency" are necessarily comparisons to and identification of deficiencies in the prior policy, indicating that the prior policy was vague and caused inconsistent results.

If adoption of the *Kazarian* policy was a change, the Policy Memorandum satisfied *Encino Motorcars* as a matter of law. Agarwal's *Encino Motorcars* challenge is not legally cognizable.

### D. Agarwal States No Claim Independent of His Challenge to the *Kazarian* Policy

There can be no doubt that central to Agarwal's claims is his challenge to the *Kazarian* policy. The adoption and/or substance of that policy is expressly challenged in each of his three claims. *See* Filing 1 at 9 (Count I, ¶ 28), (Count II, ¶ 32), 10 (Count II, ¶ 36), (Count III, ¶ 40), 11 (Count III, ¶¶ 41–42). As relief, Agarwal seeks a declaration that "USCIS's '*Kazarian* policy' and related two-step test are improper under the APA for failure to comply with 5 U.S.C. §553(b)"—thus seeking relief on a procedural challenge—"and/or for being [a]n impermissible interpretation

and constraint of 8 U.S.C. §1153(b)(1)(a)"—thus seeking relief on a substantive challenge. Filing 1 at 12 (Relief Requested, ¶ (4)). Nevertheless, in his opposition to Defendants' Motion to Dismiss, Agarwal argues in part that even if the Court rejects his "systemic challenges" to the *Kazarian* policy, "[t]he core as-applied claims proceed in any event . . . ." Filing 11 at 3. Thus, Agarwal asserts that he has a claim for judicial review of an erroneous decision by USCIS on his I-140 EB-1A Petitions—whatever the Court may decide about his challenges to the *Kazarian* policy. Apparently because he believes he has a claim independent of his challenge to the *Kazarian* policy, Agarwal describes Defendants' Motion as a "partial motion." Filing 11 at 2.

Defendants' Motion seeks alternative relief, but that does not mean that the motion seeks only "partial" dismissal. Defendants seek either dismissal of the claims in Agarwal's Complaint in their entirety or their dismissal to the extent that they challenge the *Karzarian* policy. Filing 10 at 2. More importantly, Agarwal's claims as pleaded do not challenge denial of his "extraordinary ability" visa on any ground but the alleged unlawfulness of the *Kazarian* policy. Count I alleges, "Defendant USCIS's decision to apply its Kazarian EB-1A Step 2 policy to plaintiff's Form I-140 EB-1A petitions was unlawful and is reviewable under 5 U.S.C. §702." Filing 1 at 9 (¶ 28). Thus, it is the application of the *Kazarian* policy that is alleged to be the unlawful reason for denial of his petition. This Count alleges further, "As a result of defendant USCIS's illegal conduct, the plaintiff is 'suffering [a] legal wrong because of agency action' and is 'adversely affected or aggrieved by [the] agency action,' and therefore is entitled to judicial review of the denial of her [sic] EB-1A I-140 petition under 5 U.S.C. §702. 5 U.S.C. §706(2)(A)." Filing 1 at 9 (¶ 29). The only "illegal conduct" alleged in the Count is the application of the *Kazarian* policy. Count II is entirely about the procedural deficiencies in adoption of the *Kazarian* policy. Filing 1 at 9–10 (¶¶ 30–36). Count III is also focused entirely on the *Kazarian* policy, because it asserts adoption

of that policy violated 5 U.S.C. § 706 and as a result of that "illegal conduct," Agarwal is aggrieved. Filing 1 at 11 (¶¶ 41–42). Agarwal also points to no factual allegations that he is entitled to an "extraordinary ability" visa other than his satisfaction of three "initial evidence" categories listed in 8 C.F.R. § 204.5(h) and his assertion that denial despite doing so was the result of application of the "final merits determination" under the *Kazarian* policy. *See* Filing 1 at 2 (¶ 6), 5 (¶ 16). Agarwal has not identified any factual allegations in his Complaint that plausibly suggest that he is entitled to an "extraordinary ability" visa notwithstanding application of the *Kazarian* policy.

Thus, the Court concludes that Agarwal has not asserted or has not plausibly alleged any such independent claim. Defendants' Motion to Dismiss is granted as to Agarwal's entire Complaint.

### E. Dismissal With or Without Prejudice

Defendants request that the dismissal be with prejudice. Filing 10 at 2. Agarwal argues that request is unwarranted because he challenges denial of his I-140 EB-1A Petitions on broader grounds than the policy framework, so that he should have the opportunity to amend to overcome any pleading deficiencies. Filing 11 at 19. He also argues that because legal questions are unsettled in light of an intra-district split, dismissal with prejudice is inappropriate. Filing 11 at 20. He also asserts that leave to amend should be freely given where amendment could cure any perceived deficiency. Filing 11 at 20. Defendants' reply is that the Court can determine now the legal issue of the lawfulness of the *Kazarian* policy, and a finding that the policy is lawful establishes that Agarwal's claims are not legally cognizable. Filing 14 at 1–2. Defendants argue that Agarwal cannot cure the defect in his allegations that the *Kazarian* policy is unlawful by amendment. Filing 14 at 12.

The Court made clear that the issue raised by Defendants' Motion to Dismiss is not one of factual plausibility but one of legal cognizability. Where those challenges fail as a matter of law, the deficiencies cannot be cured by amendment.

Thus, Agarwal's Complaint will be dismissed in its entirety with prejudice.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Filing 9, is granted, and Agarwal's Complaint for Declaratory Relief is dismissed in its entirety with prejudice.

2. A separate judgment will enter accordingly.

Dated this 25th day of September, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge